UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

ANDRE HOLMAN,

                 Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-5 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 8, 2017, Andre Holman pleaded guilty to Count 73 of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Andre Holman is hereby sentenced to 87 months of incarceration, 3 years of supervised release, no fine, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a 75-count Superseding Indictment against 23 defendants, including Andre Holman ("Defendant"). *See* Superseding Indictment, ECF No. 48. On September 8, 2017, Defendant pleaded guilty to Count 73 of the Superseding Indictment, which charged Defendant and others with conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) as to John Doe #5. *See* Plea Agreement ¶ 1, ECF No. 464.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in

open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now thirty years old, was born on May 21, 1988 in Brooklyn, New York. Presentence Investigation Report ("PSR") ¶ 63, ECF No. 496. Defendant is one of three children born to the consensual union of Andre Holman, Sr. and Gillian Brown. *Id.* Defendant's parents separated for unknown reasons when Defendant was young. *Id.* Defendant's father currently resides in Brooklyn, New York and is employed as a security guard. *Id.* Defendant's mother also resides in Brooklyn, New York and is employed as a special education teacher with the New York City Department of Education. *Id.* Both parents are aware of Defendant's arrest and conviction, and they remain supportive. *Id.* Defendant reports he maintains a close relationship

2

with his mother and siblings but a very limited relationship with his father. *Id.* ¶ 69. Defendant's mother described Defendant as caring and hardworking. *Id.* ¶ 64.

Defendant has two siblings. *Id.* ¶ 65. His oldest sibling, aged twenty-three, resides in Brooklyn, New York and is employed as a security guard and home health aide. *Id.* His younger sibling, aged twelve, also resides in Brooklyn, New York and is enrolled in school. *Id.* Both of Defendant's siblings are aware of Defendant's arrest and conviction, and they remain supportive. *Id.* Defendant also has two paternal half-siblings, both of whom are in their twenties and whom reside in Brooklyn, New York with their mother. *Id.* Defendant was not raised with his half-siblings and maintains limited contact with them. *Id.*

Defendant and his siblings were raised by their mother in a lower-income household in Brooklyn, New York. *Id.* ¶ 66. Defendant's father never resided with them and provided little to no assistance. *Id.* As a result, Defendant reported, his mother worked hard to provide for Defendant and his siblings. *Id.* Defendant's maternal grandmother often looked after and cared for Defendant and his sister after school. *Id.* Defendant reported his mother was often very stressed at home as a single parent. *Id.* ¶ 67. Working with children with disabilities added to her stress, Defendant noted. *Id.* She would often become upset with Defendant and his sister, and she would physically discipline them, occasionally causing bruising. *Id.* That kind of discipline ended when Defendant became older. *Id.*

Defendant has resided in Brooklyn, New York his entire life, apart from 2005 to 2006, when his mother sent him to live with his maternal aunt in Lexington, Kentucky. *Id.* ¶ 70. At the time, Defendant's mother wanted Defendant to move out of the neighborhood to attend the twelfth grade in Lexington. *Id.* Defendant reported he was raised in a neighborhood that had always been "gang territory." *Id.* ¶ 68. When walking home from school, he often avoided

3

certain areas for fear that his backpack would be stolen off his back. *Id.* In the 1990s, as the "gang" began to become a bigger presence in Defendant's neighborhood, it infiltrated the schools, and Defendant dealt with significant pressure to join. *Id.*

Prior to the instant arrest, Defendant lived in his childhood home, an apartment in a six-story building and lower-middle-income neighborhood. *Id.* ¶ 73. Defendant has been housed at the Metropolitan Detention Center ("MDC") in Brooklyn since the date of his arrest, May 24, 2015, where he has led a prayer group of upwards of twenty inmates. *Id.* ¶¶ 72, 74. At the time of the Presentence Investigation Report, he had incurred three disciplinary infractions for refusing to obey an order and failing to stand for count, refusing a work/program assignment, and possessing drugs/alcohol. *Id.* ¶ 74. He also had a pending disciplinary hearing for possession of a dangerous weapon, which Defendant alleged was not a knife, but was for food and was not sharpened. *Id.*

Defendant is not married and has no children. *Id.* ¶ 71. He reports he is largely healthy, though he was diagnosed with a heart murmur as a child and had a cyst on his back removed in 2004. *Id.* ¶¶ 76-77, 79. According to medical records from MDC, he has been diagnosed with nearsightedness and astigmatism. *Id.* ¶ 78. Defendant is mentally healthy and has never received mental health treatment. *Id.* ¶ 80.

Defendant advised he consumed alcohol roughly two times per week prior to his arrest and had a single alcoholic beverage on these occasions. *Id.* ¶ 81. He began smoking marijuana at age fourteen. *Id.* ¶ 82. He smoked marijuana daily and spent up to $100.00 per week on it. *Id.* Though Defendant does not believe he has a problem with marijuana, as he has used it while "working on [his music] craft," he is amenable to treatment. *Id.*

4

Defendant attended the twelfth grade at Martin Luther King Academy, an alternative high school for students with behavioral problems, in Lexington, Kentucky and received a high school diploma from Tates Creek High School, also in Lexington, Kentucky on March 21, 2006. *Id.* ¶ 86. Defendant attended Medgar Evers College in Brooklyn, New York but dropped out after earning thirty-one credits because he had "a lot" going on in his life and had to secure employment. *Id.* ¶ 85.

Defendant reported he was employed as a licensed, unarmed security guard from 2007 until the time of his incarceration in 2015. *Id.* ¶¶ 88-91. Defendant was also briefly employed at a construction company from September 2014 to November 2014. *Id.* ¶ 90. From 2006 to 2007, Defendant was employed as a bike messenger at Urban Express. *Id.* ¶ 91. Defendant has also procured employment as a hip hop and R&B musician since age eighteen. *Id.* ¶ 92. He advised he is a part owner of the record label "The Goodfella Music," which is made up of two additional rap artists and two producers, and he performed in at least two shows per week prior to his arrest for the instant offense. *Id.* Defendant stresses he has always held employment except for brief periods during college, has been a steady member of his church, and has been focused on creating and making music, which he had hoped to make his career. Def. Sentencing Mem. ("Def. Mem.") at 4-7, ECF No. 721.

Defendant's criminal history includes a past conviction for criminal possession of a weapon in the fourth degree. PSR ¶ 54. According to the arrest report, local court records, and the local presentence report, on January 1, 2013, Defendant engaged in a verbal dispute with a former girlfriend and threatened her with a firearm. *Id.* Later that evening, a police officer recovered from Defendant a .38 caliber Bryco Arms semi-automatic pistol. *Id.* The gun's serial number had been erased. *Id.*

Defendant was a member of the Eight Trey Gangsta Crips ("Eight Trey") and an associate of the Outlaw Gangsta Crips ("OGC"). *Id.* ¶¶ 4, 37. Members and associates of the OGC have engaged in drug trafficking, fraud, firearms trafficking, and promoting prostitution, and have committed acts of violence, including murder, attempted murder, robbery and assault, as well as other crimes. *Id.* ¶ 4. The purposes of the OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in its victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 6.

In connection with the instant offense, Defendant conspired with co-defendants Solomon Artis, Leonard Barletto, Courtney Coy, and Parris Desuze to murder John Doe #5 and John Doe #6 on May 12, 2015. PSR ¶ 33. The conspiracy was thwarted only because law enforcement intercepted telephone calls pursuant to a judicially authorized wiretap among defendants Artis, Desuze, Barletto, and Coy and arrested them before they could carry out the murders. *Id.* ¶¶ 33, 35. The defendants believed John Doe #5, John Doe #6, and a third individual—all of whom were affiliated with the gang, Bosses in Business—were responsible for the murder of a member of the OGC named Kareem Mitchell. *Id.* ¶ 34. Notably, Defendant was close friends with Mitchell. Def. Mem. at 9; Gov't Sentencing Mem. ("Gov't Mem.") at 3-4, ECF No. 720.

Artis called Desuze and reported John Doe #5 and John Doe #6 were in the East Flatbush section of Brooklyn. PSR ¶ 35. After a series of intercepted phone calls among Desuze, Barletto, and Coy about the locations of the two men, during which the callers confirmed they had guns, law enforcement observed Barletto, Coy, and Defendant together in a car parked on the block they expected to find the victims. *Id.* After Barletto, Coy, and Defendant stepped out

6

of the car and stood around the corner, Barletto and Coy were arrested along with Desuze. *Id.* At the time, the authorities did not take Defendant into custody because he had not been intercepted discussing the murder, and agents had not yet received judicial authorization to conduct a full search of the car. Gov't Mem. at 4.

On May 13, 2015, pursuant to a valid search warrant, law enforcement searched the car Defendant sat in with Barletto and Coy and found three firearms and a quantity of cocaine base. *Id.* ¶ 36. The firearms were located near where each of Defendant, Barletto, and Coy had been sitting. *Id.* The authorities arrested Defendant on May 24, 2015 after he fled to Georgia. They recovered from him handwritten song lyrics, which he wrote, suggesting he planned to carry out the murders. Gov't Mem. at 4-5.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant conspired to kill two individuals in support of a violent and dangerous gang. With his co-defendants, Defendant lied in wait for these two individuals on a public street. Any violence that would have transpired would undoubtedly have endangered the community at large. These murders would have been carried out but for the Government's discovery of the conspiracy pursuant to a judicially authorized wiretap. The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter Defendant

from further criminal activity and encourages him to sever his ties to Eight Trey and the OGC. It also seeks to protect the public from Defendant's conduct in the future. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains. Finally, it also considers Defendant's family and community support as well as his history of legitimate employment.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to Count 73 of the Superseding Indictment, which charged conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5). Plea Agreement ¶ 1. Under 18 U.S.C. § 1959(a)(5), Defendant faces a maximum term of imprisonment of ten years. 18 U.S.C. § 1959(a)(5). Defendant also faces: a maximum term of supervised release of three years, 18 U.S.C. § 3583(b)(2); a maximum fine of $250,000.00, 18 U.S.C. § 3571(b); mandatory restitution, 18 U.S.C. § 3663A; and a mandatory special assessment of $100.00, 18 U.S.C. § 3013. Because Count 73 is a Class C felony, Defendant is eligible for between one to five years probation. 18 U.S.C. § 3561.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The appropriate Guideline for violations of 18 U.S.C. § 1959(a) is Guideline § 2E1.3, which applies to violent crimes in aid of racketeering activity. *See* United States Sentencing

Commission, Guidelines Manual ("USSG") § 2E1.3 (2018). USSG § 2E1.3 instructs the Court to apply the greater of a base level offense of "(1) 12; or (2) the offense level applicable to the underlying crime or racketeering activity." *Id.*

The Guideline applicable to Defendant's underlying offense as charged in Count 73—the conspiracy to murder John Doe #5—is USSG § 2A1.5, which applies to conspiracy to commit murder. USSG § 2A1.5(a) instructs the Court to apply a base offense level of 33. Probation applied USSG § 2A1.5(a) in its calculation of the applicable guideline range. PSR ¶ 43. The adjusted offense level for Defendant's underlying offense, prior to any decreases for acceptance of responsibility, role reduction, or global resolution, is 33. PSR ¶ 48.

Defendant has demonstrated acceptance of responsibility for this offense, reducing his offense level by two levels. USSG § 3E1.1(a). The Government also intends to make a motion stating it was notified in a timely manner of Defendant's intention to enter a plea of guilty, reducing his offense level by one additional level. USSG § 3E1.1(b). Accordingly, all parties agree Defendant's offense level should be decreased by three for acceptance of responsibility. *See* PSR ¶ 41; Gov't Mem. at 2; Def. Mem. at 7.

The parties dispute additional reductions in Defendant's total offense level the Court may consider. Specifically, Defendant and the Government argue the circumstances warrant Guidelines-level reductions for: (1) global resolution; and (2) Defendant's role in the conspiracy. Probation disputes the applicability of both reductions and argues they are not warranted.

Under the Plea Agreement, Defendant and the Government stipulated if the covered defendants entered guilty pleas by September 15, 2017, an additional two-point reduction would be warranted pursuant to USSG § 5K2.0. *See* Plea Agreement ¶¶ 2, 7. All parties did not plead guilty by that time; Probation accordingly does not believe the reduction is warranted against

9

Defendant. PSR ¶ 116; *see also* Probation Sentence Recommendation at 1, ECF No. 496-1. Defense counsel and the Government agree Defendant should receive this two-point reduction. Def. Mem. at 9; Gov't Memo at 2-3. The Court finds the global resolution reduction is warranted in this case.

The Guidelines calculation in the Plea Agreement also includes a reduction for Defendant's role in the conspiracy pursuant to USSG § 3B1.2(b), which provides an additional two-point reduction "[i]f the defendant was a minor participant in any criminal activity." *See* Plea Agreement ¶ 2. Probation writes "there is nothing apparent to the Probation Department that would warrant a role reduction." PSR ¶ 37. The Government and Defendant both argue the role reduction is warranted in this case. The Government, advocating the reduction, notes "the government's understanding of the crime of conviction, and the defendant's role, have not changed, and the government therefore submits that the reduction should apply." Gov't Mem. at 2-3. The defense notes Defendant stated in his allocution he "was willing to serve as a lookout to the co-defendants or assist them based on a belief that they may be interested in revenge for the death of his friend." Def. Mem. at 9. "None of the intercepted calls mention [Defendant], nor did any intercepted call include [him]." *Id.* at 3. The defense further notes that the "car [Defendant] was travelling in on that day[] was not his, nor was he operating it." *Id.* at 9. Finally, the defense stresses the Government accepted Defendant's role was limited. *Id.* The Court finds the role reduction is warranted in this case.

With both this role reduction and the global resolution reduction, Defendant's total adjusted offense level would be 26. Defendant's past criminal convictions, described *supra*, yield a criminal history score of two, establishing a criminal history category of II. USSG Ch. 5, Part A. With a criminal history category of II and a total adjusted offense level of 26, the

10

Guidelines imprisonment range is 70 to 87 months. Def. Mem. at 3; Gov't Mem. at 3. Under the Guidelines, Defendant may also be sentenced to a term of supervised release of one to three years, *id.* § 5D1.2(a)(2) and a fine of between $12,500.00 and $125,000.00, *id.* §§ 5E1.2(c)(3), (h)(1). The Guidelines further suggest Defendant is ineligible for probation because the applicable guideline range is in Zone D of the sentencing table. USSG § 5B1.1, n.2. Probation notes there is no evidence Defendant has the ability to pay a fine. PSR ¶ 100.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement ... issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is of some relevance to Defendant's sentencing. Probation notes Defendant was involved in additional criminal conduct that could not be included in his Guidelines calculation that this Court may consider grounds for an upward departure pursuant to USSG § 4A1.3. PSR ¶ 117. As Probation writes:

> Per the plea agreement, the defendant is not being held accountable for the following additional criminal conduct: (i) a conspiracy to murder John Doe #6 on May 12, 2015; (ii) firearms possession in furtherance of Counts 13[1] and 74 of the Indictment; and (iii) bank fraud conspiracy and bank fraud between January 6, 2014, and January 20, 2015. Since this cannot be quantified in his guideline calculations, it may be considered as "other criminal conduct" and used for a departure.

*Id.* ¶ 58. Probation does not advocate this approach, however. Rather, it recommends a Guidelines-range sentence for total offense level 30, criminal history category II. *Id.* ¶ 52; Probation Sentence Recommendation at 1.

---

[1] This was likely an error on Probation's part, as Defendant was not named in Count 13 of the Superseding Indictment. Probation likely intended to reference Count 73, which was referenced in paragraph 5 of the Plea Agreement.

11

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor, requiring the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is applicable in Defendant's case, *see id.* § 3663. Since the instant offense occurred after April 24, 1996, restitution is mandatory pursuant to 18 U.S.C. § 3663A and Guideline § 5E1.1(a)(1). The Government has not provided the contact information for John Doe #5, and no victim impact statement is available. PSR ¶ 39, 112. As a result, the specific amounts owed to the individual victims are unknown, and restitution cannot be determined with accuracy. *Id.* Nevertheless, this Court, per 18 U.S.C. § 3664(d)(5), reserves its right to hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the victims.

### CONCLUSION

A sentence of 87 months of incarceration, to be followed by 3 years of supervised release, no fine, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

12

The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein, and imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 11, 2019
       Brooklyn, New York